# EXHIBIT 'A'

SABERLINES INS SVCS
750 N MOUNTAIN AVE #B
UPLAND, CA 91786

**PROGRESSIVE**

Named insured

NOVATION TRUCKING COMPANY
13415 WASHINGTON AVE
HAWTHORNE, CA 90250

**Policy number: 04481902-0**

**Underwritten by:**
**United Financial Casualty Company**
December 29, 2009
Policy Period: Dec 18, 2009 - Dec 18, 2010
Page 1 of 2

**progressiveagent.com**
**Online Service**
Make payments, check billing activity, print policy documents, or check the status of a claim.

**909-608-0612**
**SABERLINES INS SVCS**
Contact your broker for personalized service.

**800-444-4487**
For customer service if your broker is unavailable or to report a claim.

# Commercial Auto
# Insurance Coverage Summary
## This is your Declarations Page

Your coverage began the later of December 18, 2009 at 12:01 a.m. or at the time your application is executed on the first day of the policy period. This policy period ends on December 18, 2010 at 12:01 a.m.

Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 6912 (03/05). The contract is modified by forms Z435 (12/06), 4852CA (10/04), 4881CA (12/04), Z228 (07/05) and 1797 (03/05).

The named insured organization type is a corporation.

## Outline of coverage

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Non-Trucking Liability To Others | | | $494 |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured/Underinsured Motorist | Rejected | | -- |
| Uninsured Motorist Property Damage | Rejected | | -- |
| Comprehensive | | | 1,520 |
| See Auto Coverage Schedule | Limit of liability less deductible | | |
| Collision | | | 2,547 |
| See Auto Coverage Schedule | Limit of liability less deductible | | |
| **Subtotal policy premium** | | | **$4,561.00** |
| California Vehicle Assessment Fee | | | 3.60 |
| **Total 12 month policy premium** | | | **$4,564.60** |

## Important information about fees

An installment fee of $5.00 has been included in each payment. You may avoid paying additional installment fees by paying your remaining balance in full by the due date. You may reduce the amount you pay in installment fees by paying your premium in larger amounts and fewer installments. Please call your broker for details. The following additional fees may apply:

Late payment fee  $5.00

Fee for returned checks or refused payments $20.00

**Rated driver**

1. JUAN MARTINEZ

CERTIFIED COPY
THIS WILL CERTIFY THAT THE
ATTACHED IS A TRUE AND COMPLETE COPY
OF THE ORIGINAL

*[signature]*

CUSTODIAN OF RECORDS

Form 6489 CA (12/06)

Continued

Policy number: 04481902-0
NOVATION TRUCKING COMPANY
Page 2  of 2

## Auto coverage schedule

1. **2009 KW W90**
   VIN:  1XKWD49XX9R250364

   Stated Amount:  $125,000
   Garaging Zip Code:  90250          Radius:  200

| Liability Premium | Non Truck | | | | |
|---|---|---|---|---|---|
| | $494 | | | | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | Auto Total |
|---|---|---|---|---|---|
| | $1,000 | $1,307 | $1,000 | $2,072 | **$3,873** |

2. **1998 Wabash Trailer**
   VIN:  1JJV532W6WL509499

   Stated Amount:  $10,000
   Garaging Zip Code:  90250          Radius:  200

| Liability Premium | Non Truck | | | | |
|---|---|---|---|---|---|
| | $0 | | | | |

| Physical Damage Premium | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | Auto Total |
|---|---|---|---|---|---|
| | $1,000 | $213 | $1,000 | $475 | **$688** |

## Company officers

President

Secretary

**EXHIBIT 'B'**

c.  any person having proper custody of **your insured auto** until a legal representative is appointed, but in no event for more than thirty (30) days after the date of death.

8.  **Waiver**

Notice to any agent or knowledge possessed by any agent or other person shall not change or effect a waiver on any portion of this policy nor prevent **us** from exercising any of **our** rights under this policy.

9.  **Bankruptcy**

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an insured.

10.  **Inspection and Audit**

**We** shall have the right to inspect **your** property and operations at any time. This includes, but is not limited to, the right to inspect and audit the maintenance of any **autos** covered hereunder, the identity of **your** drivers and their driving records, and **your** radius of operations. In doing so, **we** do not warrant that the property or operations are safe and healthful, or are in compliance with any law, rule or regulation.

**We** shall also have the right to examine and audit **your** books and records at any time during the policy period and any extensions of that period and within three (3) years after termination of the policy, as far as they relate to the subject matter of this insurance.

11.  **Fraud, Misrepresentation and Concealment**

This policy shall be void in any case of fraud by **you**, or anyone acting on **your** behalf, at any time as it relates to the policy. **We** may deny coverage for an **accident** or **loss** if **you** or any other insured knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct in connection with the presentation or settlement of a claim. **We** reserve all rights to indemnity against a person committing fraud or misrepresentation for all payments made and costs incurred.

12.  **Liberalization**

If **we** make a change that broadens a coverage **you** have under this edition of **your** policy without additional charge, **you** will receive the broadened coverage. The broadened coverage applies on the date the coverage change is implemented in **your** state. This provision does not apply to a general program revision or **our** issuance of a

# EXHIBIT 'C'

Claim # ___10-4104673___

## CALIFORNIA AFFIDAVIT OF VEHICLE THEFT

ANY INFORMATION PROVIDED IN THIS STATEMENT, IF FALSE, MAY BE THE BASIS FOR
DENIAL OF YOUR CLAIM AND LEGAL ACTION AGAINST YOU.  ALL QUESTIONS MUST BE
ANSWERED.  IF YOUR ANSWER TO A QUESTION IS NOT KNOWN, PLEASE FILL IN "UNKNOWN".
IF THE QUESTION DOES NOT APPLY, FILL IN "N/A".

Name of Insured *Eddie Atkins*
Address (if p.o. box, include physical address) _____
*13415 Washington Ave.*
*Hawthorne, CA. 90250*
Occupation *Owner (self)*
Name, Address of Employer *13415 Washington*
*Hawthorne, CA. 90250*
Length of Present Employment *19 months*
Business Phone # *(310) 973 0274*
Current Salary *$2500⁰⁰*

Home Phone # *(310) 644-0967*
Driver's License # *M0753445* State Issued *CA*.
Social Security # / T.I.N. # *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*
Date of Birth *9-10-38*   Marital Status *M*
Spouse Name *Leticia Atkins*
Spouse Employer Name, Address *13415 Washingt.*
*Hawthorne, CA. 90250*
Spouse Employer Phone # *310-973-0274*
Number of Persons in Household *3*
Annual Household Income *between $150,000-*
*thru $250,000-*

I.   Date of theft *UNKNOWN*  Time *UNKNOWN* AM / PM   Was vehicle locked? ☑Yes ☐ No
Were ignition keys left in vehicle? ☐ Yes ☑No
Is vehicle equipped with an anti-theft device? ☐ Yes ☑No   If yes, what type? _____
Was it activated when vehicle last used? ☐ Yes ☑ No
How many cell phones in the household? ___1___   If so, please list phone #s: *310-617-1043*

When was theft discovered? Date *2-2-2010* Time *10:00* (AM)/PM  By whom (name, address,
phone #) *Eddie, Leticia Damon Lovid 13415 Washington Ave. Haw. CA*
When was vehicle last seen? Date *1-18-10* Time *UNKNOW* AM/PM  By whom (name, address,
phone #) *Eddie Atkins, Leticia Atkins, Damon Lovid*
Specific location from which vehicle was taken *8600 Block Liex St. Fontana. CA*
Reason vehicle was left at this location *temporary parking, place looks safety*
Name, address. phone # of person who left vehicle at this location *Eddie Atkins Leticia Atkins Dam*
Names, addresses, phone #'s of others who were present _____

Personal items in vehicle at the time of the theft *paper work*
Who owned them? *Novation Trucking*
Homeowners, or renters, insurance company _____ *N/A*
When was theft reported to police? Date *2-2-2010* Time *4:55* AM /PM  By whom (name,
address, phone #) *Eddie. Atkins, Leticia Atkins, 13415 Washington Ave. Haw C.*
Where was police report made? ☐ Scene of theft   ☑Police station   ☐ Other – address _____
*Hawthorne Police Station*
Has vehicle been recovered? ☐ Yes ☑No Where? _____ *N/A*
When? *N/A*   By whom? *N/A*
Recovered condition _____ *N/A*
Present location _____ *N/A*   Who notified you of recovery? _____ *N/A*
Did police make any arrests or have any suspects? ☐ Yes ☑No   Who? *N/A*
Do you suspect anyone? ☐ Yes ☑No Who? _____ *N/A*

Form No. 2224 (01/09) CA

**103**

II.   Year of vehicle _2009_   Make _Kenthworth_ Model _W900 w/15x600_   Body type _DS_   Color _White_
Vehicle Identification Number _1XKWD49XX9R25036_4_
License plate # _3QBN492_ Expiration date _3-30-10_ State _CA_ Odometer reading _192000_
Certificate of Title # _612081125A_ 2If none, why? _N/A_
Name, address appearing on title _NOVATION TRUCKING CO, INC._
Was vehicle previously salvaged, reconstructed, rebuilt, or junked?   ☐ Yes  ☒ No  If yes, explain _____

Has vehicle been damaged during the past three years?   ☐ Yes  ☒ No   Describe each occurrence
(location, type, amount of damage, date) _N/A_ _____

Were repairs completed for each occurrence?  ☐ Yes    ☐ No   ☐ Partial   By whom (name, address,
phone # _____ _N/A_ _____
Name, address of insurance company who paid damage claim for each occurrence _N/A_

III.   Have you filed any other insurance claims in the last 3 years (including Homeowners, Boat, Auto, etc)?
☐ Yes    ☐ No If yes, describe each claim (type of claim, date, location & amount paid)
_Auto Accident on 6-27-09  Paid around $12,000⁰⁰_ _____

Name of insurance company/agent for each claim filed _Victoria Ins._
Any other vehicles in your household?  ☒ Yes ☐ No   Name of insurance company and agent on these
vehicles _Alliance United Ins. Co  # AAA9004258_
Your prior insurance company and agent _Victoria Inc.  Sydney Morales_
Do you or anyone else have additional insurance on vehicle?  ☐ Yes  ☒ No   If yes, who?
Policy # _N/A_ _____ Name, address of other insurance company _N/A_

Membership AAA or other road service club?   ☒ Yes  ☐ No
Club name _Leticia Atkins_ _____ Member # _1541729708_

EQUIPMENT (Please list vehicle options above and beyond standard) _____

Was all equipment/accessories operational prior to loss?   ☒ Yes   ☐ No  If no, describe _____

IV.   CONDITION (Other Distinguishing Features – Dents, decals, trailer hitch, interior, etc.) Prior to Loss

| | Poor | Fair | Good | Excellent | DESCRIPTION | NEW | REBUILT |
|---|---|---|---|---|---|---|---|
| Paint | | | | ✓ | | | |
| Transmission | | | | ✓ | | | |
| Engine | | | | ✓ | | | |
| Body | | | | ✓ | | | |
| Tires | | | | ✓ | | | |
| Interior | | | | ✓ | | | |

1. Who performs routine maintenance service? _different Shops_ Date last serviced _APPROX 11-23-09_
2. Date of last repair work _11-23-09_   By whom? _Diesel Dynamics_
3. Type of repair completed? _Oil Change_
4. Who performed current state emission test? _Kentworth Dealar_ Date last inspected _Unknown_
5. Is vehicle used for business?  ☐ Yes   ☐ No

Form No. 2224 (01/09) CA

**104**

V.   Date vehicle purchase/leased? _July 8, 2008_   ☑ New   ☐ Used   Purchase price $ _147,158.4,_

Name, address, phone # of dealer of individual you purchased vehicle from
_Inland Kenworth, Inc. 1600 Washington Bl. Montebello, CA._

Trade in vehicle _N/A_   Trade in allowance _N/A_

How was the vehicle paid for?   ☐ Cash   ☐ Check   ☐ Financed   ☑ Other-Explain _Cashier Check_

Mileage on vehicle at time of purchase/lease _Aprox 5 miles_   At time of purchase was

the vehicle damaged?   ☐ Yes   ☑ No   If yes, describe _N/A_

If financed/leased -- name, address, phone # of company _N/A_

Account # _N/A_   At the time of theft, balance due $ _N/A_   Loan term (months) _N/A_

Monthly payment $ _N/A_   Date last loan payment made _N/A_   Is account past due? ☐ Yes ☑ No

If yes, how long? _N/A_   If vehicle leased, length of lease _N/A_   What is turn-in date of lease? _N/A_

Have you ever offered the vehicle for sale or trade?   ☐ Yes   ☑ No   When? _N/A_ How much? ____

Any offers?   ☐ Yes   ☑ No   Who? _N/A_

How long was it for sale or trade? _N/A_   Are keys in your possession? ☑ Yes   ☐ No

How many sets of keys? _2_   Who has them? _N/A_

Were all keys accounted for at time of theft?   ☑ Yes   ☐ No   If no, explain ____

---

### CA INS. CODE §1879.2

FOR YOUR PROTECTION, CALIFORNIA LAW REQUIRES THE FOLLOWING TO APPEAR ON THIS FORM: ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR THE PAYMENT OF A LOSS IS GUILTY OF A CRIME AND MAY BE SUBJECT TO FINES AND CONFINEMENT IN STATE PRISON.

---

**This affidavit must be signed. Your signature must be notarized, or witnessed in the presence of your agent, broker or claims representative.**

**The undersigned, being first duly sworn, hereby affirms that all statements made herein of his or her own knowledge are true and that all statements made herein on information and belief are believed to be true.**

Signed: _Eddie Atkins_ / _Leticia Atkins_
Eddie Atkins   Signature individual Completing Affidavit   LETICIA ATKINS.

Witness ____   Witness Address ____
Witness signature

Subscribed and sworn to, before me, this _13th_ day of _February_, Year _2010_.

_Eddie Atkins & Leticia Atkins_   ~~Personally Known~~

Licensed Notary State of _CALIFORNIA_   ✗ Identification Produced

Identification (seal)

YOLANDA A. MATTHEWS
Commission # 1678220
Notary Public - California
Los Angeles County
My Comm. Expires Jun 27, 2010

Form No. 2224 (01/09) CA

**105**

# EXHIBIT 'D'

*Law Offices of Teresa M. Starinieri*

*A Professional Corporation*

2588 El Camino Real Ste F #399, Carlsbad, CA 92008
(760) 870-4549 • (916) 458-8151 Fax • (916) 458-6111

August 24, 2010

Ms. Loni Craig
Claims Specialist
United Financial Casualty Company
10940 White Rock Road
Rancho Cordova, CA 95670

> **Re:**   <u>**Novation Trucking Co., Inc.**</u>
> **Insured:**   Novation Trucking Co. Inc.
> **Claim No:**   104104673
> **Date of Loss: 1/18/2010**

# ATTORNEY CLIENT WORK PRODUCT DOCUMENT

Dear Ms. Craig:

Please allow me to provide you my analysis and recommendation on how the Company should respond to the above-referenced claim. This letter is an attorney client privilege communication and should be treated as such. It also contains my thoughts, impressions, deductions and analysis and, therefore, constitutes attorney work product. Because it is a privileged and protected document, this letter should be maintained in confidentiality and is not intended for use by those unauthorized by United Financial Casualty Company to review.

Briefly, my recommendation is that the Company should deny this claim. The basis for the recommendation for denial is that material misrepresentations have been made in the presentation of this claim by your insureds during the investigation of this claim. Furthermore, as of this date, your insureds have failed to cooperate in the investigation of this claim in that they have failed to produce the outstanding financial records for three of their checking accounts as well as the statements from Flying J and from Comcheck. The requested documentation is needed in order to verify Mr. and Mrs. Atkins' testimony regarding the financial condition of Novation Trucking and that of Mr. and Mrs. Atkins who were the sole shareholders of Novation Trucking as your insureds have denied having any financial issues at the time of this loss. Yet

**546**

Ms. Loni Craig
Re:  Novation Trucking Matter
August 24, 2010
Page 2

the records they have produced to date fail to confirm this testimony.

## I.  FACTS:

This claim arises from the reported theft of your insureds 2009 Kenworth Tractor, VIN number 1XKWD49XX9R250364 and your insureds'1998 Wabash Trailer, VIN number 1JJV532W6WL509499, sometime between 11:00 a.m. on January 18, 2010 and 11:00 a.m. on February 2, 2010.  Mr. and Mrs. Atkins have advised the Company that on January 18, 2010, with the assistance of their driver, Mr. Damon Loudd, the insured vehicle was moved to 9600 Ilex Street in Fontana, California where they parked and secured the insured vehicle and tractor.  On February 2nd, Mr. and Mrs. Atkins along with Mr. Loudd returned to this location as they intended to bring the tractor in for repairs only to discover the insured vehicle missing.

As of this date neither the insured tractor nor trailer has been recovered.

## II.  INVESTIGATION BY THE COMPANY

Upon notification of this claim, the Company began an investigation into this matter.  The investigation included obtaining Mr. and Mrs. Atkins executed California Affidavit of Stolen Vehicle Theft report, Mr. and Mrs. Atkins' recorded statement.  The statements from the employees at Rubios Trailer Service, as well as Mr. Ken Arp's statement.  Additionally, the Company obtained the financial records for Novation trucking and three of the six personal accounts for Mr. and Mrs. Atkins.   As of this date Mr. and Mrs. Atkins have failed to provide the Company with the remaining bank records as well as the records for their account with Flying J and Comcheck.

Mrs. Atkins testified during her examination under oath that she would deposit the income from the trucking business into her personal accounts as well as into her joint account with her son rather than into the corporate accounts in order to avoid carrying a high balance in her accounts.  Mrs. Atkins went on to explain that she was attempting to obtain a loan modification on her residence and on the line of credit they obtained to start the business.  When your insureds' purchased the tractor and trailer, they obtained a line of credit against their property.  The home loan and the line of credit had a variable interest rate which was set to rise up to eleven or twelve percent thus significantly increasing their monthly payments.  Thus, the personal financial accounts are both reasonable and necessary in order to confirm your insureds' testimony that they were not suffering financially prior to this loss and, that they had the necessary income needed in order to repair the insured vehicle and trailer in order to bring it up to the new emissions requirements that went into effect on January 1, 2010 as the records they have provided to date fail to confirm their testimony on these issues.

Ms. Loni Craig
Re: Novation Trucking Matter
August 24, 2010
Page 3

Additionally, Ms. Atkins testified that the company's she did business with would provide her with cash advances on the loads that Novation trucking picked up and delivered. These advances would be placed into her accounts with Flying J and Comcheck. With these funds she would pay her driver's salaries and their expenses. Thus, again, these records are both relevant and necessary to confirm that the accounts were in good standing at the time of this loss.

The Company has further attempted to obtain the call detail records for the cellular lines utilized by Mr. and Mrs. Atkins as well as for the cellular lines utilized by the driver, Damon Loudd. Mr. Loudd as early as January 2010 had two cellular lines which were associated with Novation Trucking's account which your insureds' paid out of the corporate funds. In that your insureds had still failed to provide the complete account and call detail information as of July 14th when their examinations under oath were completed, they were provided with a release allowing Verizon Wireless to provide the records directly to the Company. This release was executed and returned by your insureds following their examinations under oath. The request was then forward to Verizon. As of this date we are still awaiting the production of the call detail records from Verizon.

In addition to obtaining the recorded statements and documentation identified above, the Company obtained the examinations under oath of Mr. and Mrs. Atkins.

While the Company has actively attempted to speak with Mr. Loudd as of this date, the contact information provided by your insureds has been either inaccurate or outdated and the Company has been unsuccessful in locating Mr. Loudd.

Mr. and Mrs. Atkins have testified that the insured tractor and trailer were purchased as an investment. Mr. Loudd is the son of Mr. Atkins' friend, Mr. Ray Dawson. The insured vehicle and tractor were purchased with the intention of having Mr. Loudd drive the insured truck and in return he would receive ten percent of the profits after the expenses had been paid. However sometime in 2009 Mr. Loudd began getting sick and by October/November he was diagnosed with sickle cell disease which prevented Mr. Loudd from being able to work for your insureds.

Additionally, sometime in October/November of 2009, Mrs. Atkins became aware of the new governmental regulations that mandated that their tractor be retrofitted to comply with the new environmental regulations. The cost to retrofit the insured tractor based upon your insureds' testimony was somewhere between $4,000.00 and $8,000.00 dollars. Additionally, the trailer needed repairs to the floor board and to the running lights. None of these repairs were completed prior to the loss of the insured vehicle.

548

Ms. Loni Craig
Re: Novation Trucking Matter
August 24, 2010
Page 4

A review of the financial records provided by your insureds fails to confirm their testimony that they had the finances to make these necessary repairs before the insured vehicle and trailer could begin to be utilized.

Lastly, while Mr. and Mrs. Atkins have denied ever attempting to sell the insured vehicle, the Company located a recent online advertisement for the insured vehicle. The advertisement was linked to an E-Bay advertisement which expired on December 20, 2009 as the reserve of $90,000.00 was not met.

At the time of your insureds examinations under oath they confirmed that at the end of November of 2009 which was the last time the insured vehicle was operated, the insured vehicle and trailer were stored in the parking lot of the abandoned Levitz furniture store located near their residence in Hawthorne . On January 18th with the assistance of Mr. Loudd as neither of your insureds knew how to drive a tractor/trailer, the insured vehicle was moved to the loss location.

Prior to discovering the insured vehicle missing, it was not moved by either of your insureds as Mr. Atkins had the only keys and key less remotes for the insured vehicle in his possession from November of 2009 through the date of the loss.

Both Mr. and Mrs. Atkins denied ever storing the insured vehicle at a storage facility or for paying for storage.

On February 11, 2010, the Company spoke with Danny Rubio of Rubios Trailer Service. Mr. Rubio advised the Company that Mr. Atkins was a prior customer. Mr. Rubio went on to state that on December 15th, Mr. Atkins brought the insured tractor and trailer to Rubios Trailer Service in order to store the insured vehicle and trailer. Mr. Atkins explained that he was attempting to sell the tractor and trailer for $100,000.00. On Saturday, January 16, 2010, Mr. Atkins and Mr. Loudd returned to Rubios and removed the insured tractor and trailer as Mr. Atkins could not afford to pay the monthly $150.00 storage fee. Against the recommendation of Mr. Rubio, your insured and Mr. Loudd moved the insured vehicle on January 16th to the corner of Ilex and Whitman Avenue. On Sunday, January 17th, Joe Rubio noted that the insured vehicle and trailer were no longer parked at this location.

Mr. Atkins was advised during his examination under oath that the Company had spoken with Rubios and had been advised that the insured vehicle had been stored at Rubios for approximately one month. Mr. Atkins was not provided with the date that Rubios stated that the insured vehicle was stored at their facility nor was he advised that Mr. Rubio had confirmed that Mr. Atkins and Mr. Loudd removed the insured vehicle on January 16th and that Mr. Rubio noted

Ms. Loni Craig
Re: Novation Trucking Matter
August 24, 2010
Page 5

that the insured vehicle and trailer were no longer at the corner of Ilex and Whittram on January 17th as Mrs. Atkins' was scheduled to testify immediately following her husband.

When confronted with this limited information from Rubios, Mr. Atkins now testified that Mr. Loudd must have moved the insured vehicle to this location without Mr. Atkins' permission or knowledge. When asked why he believed this was the case, Mr. Atkins testified that Mr. Loudd was the one who had the keys to the insured vehicle. Yet, Mr. Atkins had previously testified that only he had possession of the keys and keyless remotes as of the end of November of 2009 through the date of the loss with the exception of January 18th when he and Mr. Loudd allegedly moved the insured vehicle from the Levitz parking lot to the loss location. Thus, Mr. Atkins was not being honest and forth coming even when he was presented with information from an independent party which contradicted Mr. and Mrs. Atkins' prior testimony.

When Mrs. Atkins was presented with this information and advised that the insured vehicle had been stored at Rubios and removed on January 16th, she also testified that this was something that Mr. Loudd must have arranged and completed on his own.

As set forth above, both Mr. and Mrs. Atkins have continually advised the Company that they never attempted to sell the insured vehicle or trailer prior to this loss. At the time of Mrs. Atkins' examination under oath, she was advised that the Company had located an advertisement on line. Mrs. Atkins testified that maybe her son placed the advertisement. When asked if she gave her son permission to place an advertisement she testified that she had not. When asked why her son would place an advertisement without their permission, Mrs. Atkins testified that this was between her son and her husband.

Mr. and Mrs. Atkins have continually advised the Company that they had not utilized the insured vehicle after its last run in November of 2009 as the insured vehicle needed to be modified in order to comply with the current emission requirements. On February 2, 2010, they had received the outstanding payments which were due from the work that was completed back in November of 2009 thus, they decided to pick up the insured vehicle from Ilex Street in Fontana and bring the insured vehicle in for the necessary repairs. However, a review of the insureds' bank records fails to support this testimony.

Furthermore, while Mr. and Mrs. Atkins testified that they purchased the insured vehicle and tractor for an investment, a review of the tax records for 2008 and 2009 fails to support this testimony.

In 2008, your insureds reported an operating loss of $51,018 for the corporation. In 2009 they had a net operating loss of $33,334.00. Their individual tax returns noted a loss of $120,831.00 for the 2008 tax year and for 2009 they reported a loss of $146,355.00.

**550**

Ms. Loni Craig
Re: Novation Trucking Matter
August 24, 2010
Page 6

The corporate banking records noted that in December of 2009 the account had a positive balance of $48.81. In January of 2010 the corporate accounts had a positive balance of $18.86. In February of 2010, the corporate account had a negative balance of $11.09.

Of the two out of the five personal accounts which Mr. and Mrs. Atkins have provided to date, in December of 2009 they had a positive balance of $81.94. In January of 2010, they had a positive balance of $943.93. In February of 2010, they had a positive balance of $3,149.03.

Thus even with a positive balance in their personal account of $3,149.03, your insureds did not have the necessary funds to pay for the necessary repairs to the insured vehicle in order to allow it to begin operating on the roadway pursuant to the new governmental regulations which had taken effect as of January 1, 2010.

A.   **Examination Under Oath of Mr. Atkins:**

Mr. Atkins testified that his wife handled all of the financial affairs for their personal account as well as for the business. He could not offer any testimony regarding the expenses related to the business or his family's personal finances.

As to the facts surrounding this loss, Mr. Atkins confirmed his prior statements to the Company that he last saw the insured vehicle on January 18th, when he and Mr. Loudd along with his wife moved the insured vehicle from the parking lot by their residence to Ilex Street in Fontana, California. As stated above, Mr. Atkins was questioned in further detail regarding the storage of the insured vehicle from November 25, 2009 when the insured vehicle was last repaired at Rubios Trailer Service up through January 18th when the insured vehicle was moved to the loss location. Mr. Atkins testified that the insured vehicle remained park at the abandoned Levitz parking lot during this time. Additionally during this same period of time, Mr. Atkins testified that he had both keys and keyless remotes for the insured vehicle in his possession. On January 18th, he along with his wife and Mr. Loudd moved the insured vehicle to Ilex Street. Mr. Loudd drove the insured vehicle and he was followed by Mr. and Mrs. Atkins. The only stop they made along the way was to purchase fuel in order to allow them to complete the drive to Fontana. After they locked and secured the insured vehicle on January 18th, Mr. Atkins once again took possession of the keys and keyless remotes for the insured vehicle.

On February 2, 2010 having been paid for the outstanding invoices from November of 2009, Mr. Atkins and his wife along with Mr. Loudd all drove back to Ilex street with the intention of picking up the insured vehicle and bringing the vehicle to Rubios in order to have the trailer floor and lights repaired before taking the vehicle to Visalia to have the emission

Ms. Loni Craig
Re:  Novation Trucking Matter
August 24, 2010
Page 7

requirements completed on the tractor.  Again, Mr. Atkins confirmed that he had possession of both keys and keyless remotes when they discovered the insured vehicle missing.

Mr. Atkins initially testified that at no point in time had they ever had the insured vehicle stored at a facility nor had they paid for storage.  He attempted to modify his testimony when he was confronted with the information obtained from Rubios.  However, Mr. Atkins' testimony made no logical sense given his prior testimony regarding his possession at all times of the keys for the insured vehicle.

Mr. Atkins further denied ever attempting to sell the insured vehicle.

### A.  Examination Under Oath of Mrs. Atkins:

Mrs. Atkins confirmed that she handled the business finances as well as her family's personal accounts.  While Mrs. Atkins testified that at the time of the loss they had the funds to pay for the necessary repairs for the insured vehicle, she could not explain where the funds were held given the records and documents she had provided at the time of her examination under oath.  At this point Mrs. Atkins testified that she did not report everything on her tax returns and placed funds she received from the business into her personal accounts to include her joint checking account that she maintained with her son.  Mrs. Atkins was advised that she would need to provide the bank statements for the four personal accounts she had failed to previously provide as well as the account information for the Flying J account and Comcheck account in order to allow the Company to confirm the business' receipts and expenses.  To date, this information has yet to be provided.

While Mrs. Atkins paid all of the expenses related to the business, she could not recall if the insured vehicle had ever been stored at Rubios Trailer Services.  When she was advised that the Company had discovered that the insured vehicle was just removed from Rubios on January 16th, Mrs. Atkins had no explanation and simply testified that she last saw the insured vehicle on January 18th.

After denying that they had ever attempted to sell the insured vehicle prior to the loss, Mrs. Atkins when confronted with the information the Company obtained on line in which the insured vehicle had been listed for sale as late as December of 2009, now testified that her son may have placed this advertisement.  When questioned as to why her son would place this advertisement, Mrs. Atkins testified that this was something between her son and her husband.

Like her husband, Mrs. Atkins has denied having anything to do with the loss of the insured vehicle and trailer.  She has further denied having any information as to who may have been involved with the loss of the insured vehicle.

Ms. Loni Craig
Re: Novation Trucking Matter
August 24, 2010
Page 8

## III. <u>MATERIAL MISREPRESENTATIONS</u>

A witness, who is willfully false in one material part of his or her testimony, is to be distrusted in others. The Company may reject the whole testimony of a witness who has willfully testified falsely as to a material point, unless from all the evidence, the Company believes the probability of truth favors the witness testimony in other matters.

A.   **Mr. and Mrs. Atkins have provided material misrepresentations as to the facts of this loss.**

1.   Mr. and Mrs. Atkins have denied ever attempting to sell the insured vehicle prior to this loss.

2.   Mr. and Mrs. Atkins have denied ever having the insured vehicle stored at a storage facility or paying for storage at a storage facility.

3.   Mr. Atkins testified that the insured vehicle from the end of November of 2009 up until January 18, 2010 had been stored at the abandoned parking lot of the Levitz store located near his residence in Hawthorne, California. On January 18th, Mr. Atkins along with his wife and Mr. Loudd moved the insured vehicle to Ilex street approximately 500 feet from Rubios Trailer Service.

4.   On February 11, 2010, the Company spoke with Danny Rubio of Rubios Trailer Service. Mr. Rubio advised the Company that on December 15th, Mr. Atkins brought the insured tractor and trailer to Rubios Trailer Service in order to store the insured vehicle and trailer. Mr. Atkins advised Mr. Rubio that he was attempting to sell the tractor and trailer for $100,000.00. Mr. Rubio further advised the Company that on Saturday, January 16, 2010, Mr. Atkins and Mr. Loudd returned to Rubios Trailer Service and removed the insured tractor and trailer as Mr. Atkins could not afford to pay the monthly $150.00 storage fee. Against the recommendation of Mr. Rubio, Mr. Atkins and Mr. Loudd moved the insured vehicle on January 16th to the corner of Ilex and Whitman Avenue. On Sunday, January 17th, Joe Rubio noted that the insured vehicle and trailer were no longer parked at this location. Neither Danny Rubio nor Joe Rubio have seen the insured vehicle since this date and at no point in time did either of your insureds or Mr. Loudd ever advise Danny or Joe Rubio that the insured vehicle had been stolen.

**553**

Ms. Loni Craig
Re: Novation Trucking Matter
August 24, 2010
Page 9

5.    While Mr. and Mrs. Atkins have denied ever attempting to sell the insured vehicle, the Company located an online advertisement for the insured vehicle. The advertisement was linked to an E-Bay advertisement which expired on December 20, 2009 as the reserve of $90,000.00 was not met.

6.    Mr. and Mrs. Atkins have testified that on February 2, 2010, they intended to move the insured vehicle from Ilex Street to the repair facility in order to have the trailer and tractor repaired as they now had the funds available. The estimated repairs for the mandatory emissions updates were estimated to cost between $4,000.00 and $8,000.00 dollars. Mr. Atkins testified that the estimated costs for the trailer were between $600.00 and $700.00.

7.    The corporate banking records noted that in December of 2009 the account had a positive balance of $48.81. In January of 2010 the corporate accounts had a positive balance of $18.86. In February of 2010, the corporate account had a negative balance of $11.09.

Of the two out of the five personal accounts for which Mr. and Mrs. Atkins have provided to date, in December of 2009 they had a positive balance of $81.94. In January of 2010, they had a positive balance of $943.93. In February of 2010, they had a positive balance of $3,149.03.

Thus even with a positive balance in their personal account of $3,149.03, your insureds did not have the necessary funds to pay for the repairs to the insured vehicle in order to allow it to begin operating on the roadway pursuant to the new governmental regulations which had taken effect as of January 1, 2010.

## IV.  **THE POLICY**

The policy of insurance issued to you and in effect at the time of the loss states, in pertinent part:

### **GENERAL PROVISIONS**

. . . .

### 11.  Fraud, Misrepresentation and Concealment

This policy shall be void in any case of fraud by **you**, or any one acting on **your** behalf, at

Ms. Loni Craig
Re: Novation Trucking Matter
August 24, 2010
Page 10

any time as it relates to the policy. **We** may deny coverage for an **accident** or **loss** if **you** or any other insured knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct in connection with the presentation or settlement of a claim. **We** reserve all rights to indemnity against a person committing fraud or misrepresentation for all payments made and costs incurred.

There can be no loss within the meaning of the policy if, from the standpoint of the insured, the result was expected or intended. See *Meyer v. Pacific Employee Insurance Co.* (1966) 233 Cal.App.2d 321. Thus, when the insured deliberately caused the loss, it was not an accident. See, *Merced Ins. Co. v. Mendez* (1989) 213 Cal.App.3d 41, 50; *Zuckerman v. Underwriters at Lloyds* (1954) 42 Cal.App.2d 460, 473.

California Insurance Code Section 533 provides as follows: "An insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or the insured's agent or other."

This Code Section has often been held to be part of every insurance contract that amounts to an exclusionary clause written into the contact by statute. It reflects the public policy against contracts that exempts anyone from personal responsibilities for willful injury in a policy to prevent insurance coverage from encouraging willful and wrongful conduct. (*Toberlin v. Canadian Indemnity Company* (1964) 61 Cal.2d 638, 648; *United States Fidelity and Guaranty Company v. American Employers Insurance Company* (1984) 159 Cal.App.3d 277, 283).

California courts have also held that willful false statements or concealments made by an insured with the intent to defraud the insurer totally voids the policy of insurance and relieves the insurer of its liability thereunder. *Singleton v. Hartford Fire Insurance Company* (1930) 105 Cal.App. 302. To void a policy based on the insured's violation of the Standard Fraud and Concealment Clause, the false statement must have been knowingly and willfully made with the intent, express or implied, to deceive the insurer. Materiality of the statement is determined by the objective standard of its effect upon a reasonable insurer. *Cummings v. Fire Insurance Exchange* (1988) 202 Cal.App.3d 1407, 1414-1416.

It is not necessary that the insurer actually be defrauded since the intent at false swearing is sufficient to void the policy. *Nagle-Taylor Automotive Supplies, Inc. v. Aetna Insurance Company* (1980) 81 Illinois App.3d 607.

California Insurance Code Section 358 explains that, "a representative is false when the facts fail to correspond with the assertions or stipulations." Insurance Code Section 330 states, "neglect to communicate that which a party knows and ought to communicate is concealment.

Ms. Loni Craig
Re: Novation Trucking Matter
August 24, 2010
Page 11


Under California law, the materiality of a false statement in an insurance claim is determined by the reasonable relevance of the inquiry and if misrepresentation concerns a subject reasonably relevant to the investigation by the insurer, and if a reasonable insurer would attach importance to the facts misrepresented, then it is material. *Cummings v. Fire Insurance Exchange* (1988) 202 Cal.App.3d 1407, 1417. In other words, materiality is determined solely by the probable and reasonable effect the truthful answers would have upon the insurer. *Thompson v. Occidental Life* (1973) 9 Cal.3d 904, 916.

In order for an insurer to determine if a policy is void for material misrepresentation, Courts have ruled that misrepresentations must have been knowingly and intentionally made with the intention of defrauding the insurer. *Padrotti v. American National Fire Insurance Company* (1928) 90 Cal.App. 688, 661.

In *Calfin v. Commonwealth Insurance Company* (1884) 110 U.S. 81, 85, the United States Supreme Court explained a concept of materiality in intent as follows:

> "A false answer as to any matter of fact material to
> the inquiry, knowingly, and willfully made, with the
> intent to deceive the insurer, would be fraudulent.
> If it accomplishes its results, it would be fraud
> effected, if it failed, it would be fraud attempted.
> And if a matter were material and a statement false,
> to the knowledge of the party making it, and
> willfully made, the intention to deceive the insurer
> would be necessarily implied, for the law presumes
> every man to intend the natural consequences of his
> acts. No one can be permitted to say, in respect to
> his own statements, on a material matter, that he did
> not expect to be believed, and if they are knowingly
> false, and willfully made, the fact that they are
> material is proof of an attempted fraud, because
> their materiality in the eyes of the law consist in
> their tendency to influence the conduct of the party
> who has interest in them and to whom they are
> addressed."

Based upon the investigation of the claim, the testimony given at the examination under oath, and the recorded statements and interviews conducted by the Company in this matter, it is my opinion that your insureds have misrepresented material facts in the presentation of this claim and is, therefore, excluded from coverage under the policy. Furthermore, denial of this claim by

Ms. Loni Craig
Re:  Novation Trucking Matter
August 24, 2010
Page 12


United Financial Casualty Company is reasonable.

After you have had an opportunity to review this correspondence, please contact me at
(916) 458-8151 to discuss the further handling of this matter.

Very truly yours,

Law Offices of Teresa M. Starinieri,
A Professional Corporation


Teresa M. Starinieri

**557**